**E-FILED on** __11/21/2008__

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ADOBE SYSTEMS INCORPORATED,<br><br>           Plaintiff,<br><br>     v.<br><br>CHRISTOPHER CAIN, an individual and d/b/a www.ascendancygroup.com, et al.,<br><br>           Defendants. | No. 5:08-cv-02435 RMW<br><br><br><br>ORDER GRANTING ENTRY OF DEFAULT JUDGMENT<br><br>**[Re Docket No. 17]** |

     Plaintiff Adobe Systems Incorporated ("Adobe") moves for default judgment against defendant Christopher Cain ("Cain"), an individual d/b/a/ as www.ascendancygroup.com.  The court has considered the papers submitted in support of this motion, the arguments of counsel and the

declarations of Mr. Johnson, Mr. Stickle and Ms. Drey.[1] For the reasons set forth below, the court grants Adobe's motion for default judgment.

# I. BACKGROUND

## A. Adobe Systems Incorporated

Adobe develops and distributes computer software programs that offer developers and enterprises tools for creating, managing, delivering and engaging with content across multiple operating systems, devices and media. Compl. ¶ 2. Adobe owns copyrights in its software and owns the exclusive rights to reproduce and distribute to the public copies of Adobe software in the United States. *Id.* ¶ 8. Among titles produced and distributed by Adobe are *Acrobat*, *Creative Suite*, *Dreamweaver*, *Flash, Illustrator*, *PageMaker*, *Photoshop*, and *Shockwave*. *Id.* Similarly, Adobe owns trademarks in such product names, including the ADOBE, ACROBAT, CREATIVE SUITE, FLASH, PHOTOSHOP, and SHOCKWAVE trademarks. *Id.* ¶ 9. Adobe asserts that these trademarks have been registered with the U.S. Patent and Trademark Office, have acquired secondary meaning, and have been continuously used by Adobe from the registration date or earlier until the present time. *Id.* ¶ 10. Moreover, Adobe contends that it undertakes great expense and risk in conceiving, developing, testing, manufacturing, marketing, and delivering its software products to consumers and expends significant resources to develop and maintain the considerable goodwill it enjoys in its trademarks and in its reputation for high quality. *Id.* ¶¶ 2, 9.

## B. Christopher Cain and www.ascendancygroup.com

On January 11, 2008, Christopher Johnson, an attorney and owner of Effective Piracy Enforcement, Inc. ("EPE") reviewed auctions posted by an eBay user with the ID "nachuri1." Johnson Decl. ¶ 3. Johnson engaged in a transaction with "nachuri1" for a copy of Adobe

---

[1] On October 3, 2008, the court requested further briefing from Adobe regarding whether the court has personal jurisdiction over Cain. Upon review, the court finds that Adobe has established jurisdiction over Cain based on the effects test. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (applying the effects doctrine to a trademark infringement case); *see also Calder v. Jones*, 465 U.S. 783 (1984) (establishing an "effects test" for intentional action aimed at the forum state). Under *Calder*, the defendant must have (1) committed an intentional act, which was (2) expressly aimed at the forum state (or, in this case, the Northern District of California), and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 805 (9th Cir. 2004). Adobe has demonstrated that Cain satisfied these requirements under the effects test.

1 Photoshop CS3, which was advertised as "ADOBE PHOTOSHOP CS3 NIB – FULL RETAIL
2 WITH BONUS VIDEO." *Id.* Johnson placed the winning bid of $285.00 for "ADOBE
3 PHOTOSHOP CS3 NIB – FULL RETAIL WITH BONUS VIDEO" and payment through PayPal
4 was sent to eBay seller "nachuri1," identified by eBay and Pay Pal as "accendancygroup.com" and
5 Christopher Cain. *Id.* ¶ 4.

6 On March 20, 2008, Johnson received the package pursuant to his order. The package
7 contained one disc labeled "ADOBE PHOTOSHOP CS3" and another labeled "ADOBE
8 CREATIVE SUITE 3" with packaging labeled with Adobe's trademarks. *Id.* ¶ 6. The package and
9 information related to the purchase was turned over to Chris Stickle, an attorney for Adobe, who
10 examined the discs and packaging for authenticity. Stickle Decl. ¶ 4. Stickle believed and Adobe
11 contends that the product is counterfeit because it recreates various of Adobe's trademarks and
12 competes directly with similar products distributed and offered for sale by Adobe and its authorized
13 licensees. *Id.* ¶ 5; Compl. ¶¶ 15, 16. Adobe alleges on information and belief that defendant or his
14 agent made the copies. *Id.* ¶ 15. Adobe claims it has not nor have any of its authorized agents
15 licensed or consented to Cain's use and distribution of its software and trademarks. *Id.*

16 Adobe filed its complaint against Cain on May 12, 2008 alleging claims of copyright and
17 trademark infringement. Cain was served with a summons and the complaint on June 5, 2008. Drey
18 Decl. ¶ 2; Docket No. 10 (Certificate of Service by Adobe). Cain contacted Adobe on July 16, 2008
19 to discuss the documentation that would be needed to engage in meaningful settlement negotiations.
20 Drey Decl. ¶ 4. Despite this first and only communication, Cain never appeared or otherwise
21 responded to the complaint. *Id.* ¶ 4. On August 6, 2008, default was entered against Cain. *Id.* ¶ 5.
22 In addition to a permanent injunction against further infringing activities, Adobe seeks $250,000 in
23 statutory damages against Cain and post-judgment interest.

## II. ANALYSIS

### A. Default judgment

26 Under Federal Rule of Civil Procedure 55(b)(2), a party can apply to the court for entry of
27 judgment by default. "The district court's decision whether to enter a default judgment is a
28 discretionary one." *Aldabe v. Aldabe,* 616 F.2d 1089, 1092 (9th Cir. 1980). In exercising its

discretion to enter default judgment, the court will consider the following factors: (1) the possibility of prejudice to plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning the material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool,* 782 F.2d 1470, 1471-72 (9th Cir. 1986). For the following reasons, these factors favor entry of default judgment against defendant Cain.

**1.     Merits of Substantive Claims and Sufficiency of the Complaint**

After the entry of default, well-pleaded factual allegations in the complaint are taken as true, except as to the amount of damages. *Fair Hous. of Marin v. Combs,* 285 F.3d 899, 906 (9th Cir. 2002). The merits of Adobe's substantive claims and the sufficiency of the complaint can thus be considered together. Although the complaint alleges claims for copyright infringement, Adobe's motion for default judgment addresses only its claims for trademark infringement.

Adobe claims that Cain infringed at least five of its trademarks. To prove trademark infringement under 15 U.S.C. § 1114, Adobe must show: (1) it has a valid, protectable trademark; (2) it owns the trademark; (3) Cain has used in commerce without authorization a copy, reproduction, counterfeit or colorable imitation of Adobe's mark in connection with the sale, distribution, or advertising of goods and services; and (4) Cain's use of the mark is likely to cause confusion. *See Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (citing *Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999)); 15 U.S.C. § 1114.

Here, Adobe alleges all the facts necessary to establish trademark infringement by Cain. Adobe alleges that its marks are valid and protectable trademarks registered with the United States Patent and Trademark Office and owned by Adobe. Registration of a mark on the principal register in the Patent and Trademark Office is prima facie evidence of the validity of the mark. *See Applied Info.*, 511 F.3d at 970. In its complaint and through declarations, Adobe has shown that it owns the registered trademarks. Compl. at 15:1-16:9; Stickle Declaration 3; Ex. E. Adobe further alleges that the use of its marks is likely to cause confusion as to the product's origin and that consumers would

believe the software to be a genuine Adobe product. Cain's use of Adobe's marks creates consumer confusion, including confusion as to Adobe's "affiliation, sponsorship, endorsement or approval of the unauthorized product." Compl. ¶ 25-26. Thus, taking the factual allegations in Adobe's complaint as true, Adobe has adequately stated a claim for trademark infringement.

### 2. Remainder of the *Eitel* Factors.

The remaining *Eitel* factors weigh in favor of granting Adobe's default judgment motion. First, if the default judgment motion is denied, Adobe will be left without a remedy or means to prevent Cain's continued infringement. Although Adobe's counsel received correspondence from Cain after he was served, there is no evidence that Cain has been in contact with Adobe since that time. Because Cain never filed an answer to the complaint or appeared before the court, it is unclear whether there would be a possibility of dispute over material facts. Further, because Adobe has sufficiently alleged facts necessary to maintain its claims for relief under the Lanham Act and Cain has made no attempt to challenge the accuracy of the complaint, no dispute of material fact exists that would preclude the court from granting Adobe's motion. Also, the damages are statutory and the amount, although a large sum of money, is much less than Adobe could request under the statute. Moreover, there is no evidence that Cain's failure to respond was the result of excusable neglect. Cain knew that the complaint was filed against him, as evidenced by his contact with Adobe regarding settlement, yet he chose not to appear before the court. Even though policy favors deciding cases on the merits, Rule 55(b) allows the entry of default judgment where, in situations such as this, the defendant has refused to litigate. *See PepsiCo, Inc. v. Cal. Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) (stating that the "defendants failure to answer the plaintiff's complaint makes a decision on the merits of the case impractical, if not impossible."). On balance, the *Eitel* factors weigh in favor of granting default judgment.

### B. Determination of Relief

Although the factual allegations are taken as true simply because of Cain's default, some proof of the amount of damages requested is required. *Geddes v. United Fin. Group,* 559 F.2d 557, 560 (9th Cir. 1977). Adobe seeks a permanent injunction under 15 U.S.C. § 1116(c), statutory damages under 15 U.S.C. § 1117(c), and post-judgment interest under 28 U.S.C. § 1961(a).

### 1. **Permanent Injunction.**

Under the Lanham Act, a court may enter an injunction against a defendant to prevent future trademark infringement. *See* 15 U.S.C. § 1116(a); *Century 21 Real Estate Corp. v. Sanlin*, 846 F.2d 1175, 1180-81 (9th Cir. 1988) ("Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement."). An injunction is warranted when past behavior and ongoing possibility constitute a future threat of continued infringement. *See Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1103 (N.D. Cal. 2003).

Adobe alleges that unless Cain is enjoined he will continue to infringe causing irreparable harm and damage to Adobe. Compl. ¶ 22, 28. Cain's refusal to answer or appear in this litigation has given the court no assurance that Cain's infringing activity will cease and makes it difficult for Adobe to prevent further infringement. Here, injunctive relief is warranted and Adobe's motion for a permanent injunction is granted.

### 2. **Statutory Damages.**

Under trademark law, a plaintiff may elect to recover an award of statutory damages for actions involving the use of a counterfeit mark at any time before final judgment is entered. 15 U.S.C. § 1117(c). In its discretion, a court can award not less than $500 but not more than $100,000 for non-willful infringement, and up to $1,000,000 for willful trademark infringement. *Id.* As the statute's range indicates, the court is given broad discretion to determine the amount of statutory damages to be awarded. *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990). Willful infringement requires "knowledge that the defendant's conduct constitutes [trademark] infringement." *Id.* at n.3. Willfulness can also be inferred from a defendant's failure to defend. *Philip Morris USA, Inc. v. Castworld Prods., Inc.,* 219 F.R.D. 494, 500 (C.D. Cal. 2003) (holding that defendant willfully infringed plaintiff's trademark based on plaintiff's allegations of willful infringement and defendant's "failure to comply with the judicial process or to participate in any way in the present litigation").

Although Adobe argues that Cain's infringement was willful, Adobe does not ask for the maximum enhanced statutory damages for the infringement of each trademark. Adobe seeks

$50,000 for each of the five trademarks infringed for a total of $250,000 in statutory damages. Adobe argues that Cain's conduct is willful because: (1) Cain failed to defend this lawsuit or any of Adobe's allegations in the complaint; and (2) Adobe's trademarks were duplicated in Cain's counterfeit merchandise. Whether Cain acted willfully or with bad faith "require[s] a connection between [the] defendant's awareness of its competitor and its actions at those competitors' expense." *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993). Here, willfulness can be inferred from the declarations and exhibits attached to Adobe's application for default judgment. Printouts from Cain's eBay auction webpage show Adobe products listed as "FULL RETAIL," "NEW IN BOX," and "STILL FACTORY SEALED." Pl.'s Mot. for Default, Ex. A at 21. Cain's statements on the auction website basically declare that the counterfeit products are real and authentic while asking for a much lower price than what Adobe charges for the product. This conduct plainly constitutes a deliberate attempt to deceive, entitling Adobe to recover up to the maximum statutory damages per counterfeit mark for type of good sold or offered as provided under § 1117(c)(2).

     In calculating reasonable statutory damages owned to Adobe, a recent trademark counterfeiting case brought by Microsoft in the Northern District of California is instructive. Microsoft identified only three units of counterfeit software that were sold by the defendant but asked for statutory damages in excess of three million dollars. *Microsoft Corp. v. Ricketts*, No. C 06-06712 WHA, Slip Copy, 2007 WL 1520965, *4 (N.D. Cal. May 24, 2007). The court looked to estimates of actual damages in calculating the statutory damages and found that plaintiff had not presented an estimate of how much the defendant profited from his infringing activity. *Id*. The court accordingly decreased the statutory damages award to $1,000 per trademark infringed and $1,500 per copyright infringed, holding that the amount is "twice the minimum under each statute to reflect the finding of willfulness" and that coupled with a permanent injunction the damages "will adequately serve the purpose of deterrence." *Id*.; *see also Chanel Inc. v. Doan*, 2007 WL 781976, *5 (N.D. Cal. Mar. 13, 2007) ("Although the statutory damages need not reflect the defendants' unlawfully obtained profits, some district courts use § 1117(b) as a guide for setting damages under § 1117(c).").

ORDER GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT—No. 5:08-cv-02435 RMW
ANK        7

Similarly, Adobe has identified only one unit of counterfeit software that Cain sold and no where explains how the statutory damages requested in the amount of $50,000 per trademark infringed bears a plausible relationship to Cain's profits from infringement. "Statutory damages are intended to serve as a deterrent, but that does not justify such a windfall." *Microsoft*, 2007 WL 1520965 at *4 (citing *Peer Int'l*, 909 F.2d at 1332). Adobe has presented no evidence of how much Cain profited from his infringing activity or why $50,000 is an appropriate award other than it being more reasonable than a million dollars and that it works as a deterrent. The court agrees with the approach taken in *Microsoft* and holds that Adobe is entitled to $1,000 per trademark infringed, for a total of $5,000.

At the hearing on the motion, the court shared its intent to award $5,000. Adobe objected and argued that if it had been able to conduct discovery, it would have been able to prove that Cain engaged in multiple acts of infringement and that the damages award would be higher. The court recognizes the dilemma and the concern that default judgments that are less than what would be awarded after discovery will incentivize defendants to fail to appear. Nevertheless, Adobe acknowledged at the hearing that it has proof of only one infringing trap sale. Given that the record is limited to evidence of one infringing sale, the court does not believe it is reasonable to award more than $5,000. *Accord Microsoft*, 2007 WL 1520965 at *4. However, the court will enter a permanent injunction, and if Cain continues to infringe Adobe's trademarks, Adobe may seek to hold Cain in contempt.

**C. Post-Judgment Interest**

Adobe also seeks post-judgment interest from the date of the entry of judgment until the date the judgment is paid in full. 28 U.S.C. § 1961(a) mandates that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." *Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 290 (9th Cir. 1994). Adobe is entitled to interest on a judgment "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." 28 U.S.C. § 1961(a); *Bd. Of Trs. of Laborers Health & Welfare Trust Fund For N. Cal. v. Shade Constr. & Eng'g*, No. C 06-6830, 2007 WL 3071003, at *11 (N.D. Cal. Oct. 19, 2007). Accordingly, Adobe is

entitled to post-judgment interest on the judgment and the calculation will begin on the date judgment is entered against Cain.

### III.  ORDER

For the foregoing reasons, the court grants Adobe's motion for default judgment.  Adobe's motions for a permanent injunction and post-judgment interest are also granted.  Judgment shall be entered in favor of Adobe in the amount of $5,000 in damages against defendant Cain.

DATED:     10/22/08                       /s/ Ronald M. Whyte

RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiff:**

J. Andrew Coombs andy@coombspc.com
Nicole L. Drey nicole@coombspc.com

**Defendants:**

(no appearances)

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** _____11/21/2008_____   _____TSF_____

                                                           **Chambers of Judge Whyte**